16 U.S. 210 (____)
3 Wheat. 210
EVANS
v.
EATON.
Supreme Court of United States.

*223 February 6th. C.J. Ingersoll, for the plaintiff.
Hopkinson and Sergeant, contrà.
*232 *503] *March 7th, 1818. MARSHALL, Ch. J., delivered the opinion of the court.
In this case, exceptions were taken in the circuit court, by the counsel for the plaintiff in error, 1st. To the opinion of the court, in admitting testimony offered by the defendant in that court. 2d. To its opinion in rejecting testimony offered by the plaintiff in that court. 3d. To the charge delivered by the judge to the jury.
Under the 6th section of the act for the promotion of useful arts, and to repeal the act heretofore made for that purpose, the defendant pleaded the general issue, and gave notice that he would prove at the trial, that the improved hopperboy, for the use of which, without license, this suit was instituted, had been used previous to the alleged invention of the said Evans, in several places (which were specified in the notice), or in some of them, "and also at sundry other places in Pennsylvania, Maryland, and elsewhere in the United States." Having given evidence as to some of the places specified in the notice, the defendant offered evidence as to some other places *233 not specified. This evidence was objected to by the plaintiff, but admitted by the court; to which admission, the plaintiff's counsel excepted.
The 6th section of the act appears to be drawn, on the idea, that the defendant would be not at liberty to contest the validity of the patent on the general issue. It, therefore, intends to relieve the defendant from the difficulties of pleading, when it allows him to give in *evidence matter [*504 which does affect the patent. But the notice is directed for the security of the plaintiff, and to protect him against that surprise to which he might be exposed, from an unfair use of this privilege. Reasoning merely on the words directing this notice, it might be difficult to define, with absolute precision, what it ought to be include, and what it might omit. There are, however, circumstances in the act which may have some influence on this point. It has been already observed, that the notice is substituted for a special plea; it is further to be observed, that it is a substitute to which the defendant is not obliged to resort. The notice is to be given only when it is intended to offer the special matter in evidence on the general issue. The defendant is not obliged to pursue this course, he may still plead specially, and then the plea is the only notice which the plaintiff can claim.[1] If, then, the defendant may give in evidence, on a special plea, the prior use of the machine, at places not specified in his plea, it would seem to follow, that he may give in evidence its use, at places not specified in his notice. It is not believed, that a plea would be defective, which did not state the mills in which the machinery alleged to be previously used was placed.
But there is still another view of this subject, which deserves to be considered. The section which directs this notice, also directs, that if the special matter stated in the section be proved, "judgment shall be rendered for the defendant, with costs, and the patent shall be declared void." The notice might be intended, not only for the information of the plaintiff, *but for the purpose of spreading on the record the cause for which [*505 the patent was avoided. This object is accomplished by a notice which specifies the particular matter to be proved. The ordinary powers of the court are sufficient to prevent, and will, undoubtedly, be so exercised, as to prevent the patentee from being injured by the surprise.
This testimony having been admitted, the plaintiff offered to prove that the persons, of whose prior use of the improved hopperboy the defendant had given testimony, had paid the plaintiff for licenses to use his improved hopperboy in their mills, since his patent. This testimony was rejected by the court, on the motion of the defendant, and to this opinion of the court, also, the plaintiff excepted. The testimony offered by the plaintiff was entitled to very little weight, but ought not to have been absolutely rejected. Connected with other testimony, and under some circumstances, even the opinion of a party may be worth something. It is, therefore, in such a case as this, deemed more safe to permit it to go to the jury, subject, as all testimony is, to the animadversion of the court, than entirely to exclude it.
We come next to consider the charge delivered to the jury. The errors alleged in this charge may be considered under two heads: 1st. In construing the patent to be solely for the general result produced by the combination *234 of all the machinery, and not for the several improved machines, as well as for the general result. 2d. That the jury must find for the defendant, *506] if they *should be of opinion, that the hopperboy was in use prior to the invention of the improvement thereon by Oliver Evans.
The construction of the patent must certainly depend on the words of the instrument. But where, as in this case, the words are ambiguous, there may be circumstances which ought to have great influence in expounding them. The intention of the parties, if that intention can be collected from sources which the principles of law permit us to explore, are entitled to great consideration. But before we proceed to this investigation, it may not be improper to notice the extent of the authority under which this grant was issued. The authority of the executive to make this grant, is derived from the general patent law, and from the act for the relief of Oliver Evans. On the general patent law alone, a doubt might well arise, whether improvements on different machines could regularly be comprehended in the same patent, so as to give a right to the exclusive use of the several machines, separately, as well as a right to the exclusive use of those machines in combination. And if such a patent would be irregular, it would certainly furnish an argument of no inconsiderable weight against the construction. But the "act for the relief of Oliver Evans" entirely removes this doubt. That act authorizes the secretary of state to issue a patent, granting to the said Oliver Evans the full and exclusive right, in his invention, discovery and improvements in the art of manufacturing flour, and in the several *507] machines *which he has invented, discovered, improved and applied to that purpose. Of the authority, then, to make this patent co-extensive with the construction for which the plaintiff's counsel contends, there can be no doubt.
The next object of inquiry is, the intention of the parties, so far as it may be collected from sources to which it is allowable to resort. The parties are the government, acting by its agents, and Oliver Evans. The intention of the government may be collected from the "act for the relief of Oliver Evans." That act not only confers the authority to issue the grant, but expresses the intention of the legislature respecting its extent. It may fairly be inferred from it, that the legislature intended the patent to include both the general result, and the particular improved machines, if such should be the wish of the applicant. That the executive officer intended to make the patent co-extensive with the application of Oliver Evans, and with the special act, is to be inferred, from the reference to both in the patent itself. If, therefore, it shall be satisfactorily shown from his application, to have been the intention of Oliver Evans to obtain a patent including both objects, that must be presumed to have been also the intention of the grantor.
The first evidence of the intention of Oliver Evans is furnished by the act for his relief. The fair presumption is, that it conforms to his wishes; at least, that it does not transcend them. The second, is his petition to the *508] secretary of state, *which speaks of his having discovered certain useful improvements, and prays a patent for them, "agreeably to the act of congress, entitled, an act for the relief of Oliver Evans." This application is for a patent co-extensive with the act. This intention is further manifested by his specification. It is not to be denied, that a part of this specification would indicate an intention to consider the combined operation *235 of all his machinery as a single improvement, for which he solicited a patent. But the whole, taken together, will not admit of this exposition. The several machines are described with that distinctness which would be used by a person intending to obtain a patent for each. In his number 4, which contains the specification of the drill, he asserts his claim, in terms, to the principles, and to all the machines he had specified, and adds, "they may all be united and combined in one flour-mill, to produce my improvement in the art of manufacturing flour complete, or they may be used separately for any of the purposes specified and allotted to them, or to produce my improvement in part, according to the circumstances of the case."
Being entitled by law to a patent for all and each of his discoveries; considering himself, as he avers in his specification and affirmation, as the inventor of each of these improvements; understanding, as he declares he did, that they might be used together so as to produce his improvement complete, or separately, so as to produce it in part; nothing can be more improbable, than that Oliver Evans intended to obtain a patent solely for their combined operation. His affirmation, *which is annexed to his [*509 specification, confirms this reasoning. To the declaration that he is the inventor of these improvements, he adds, "for which he solicits a patent." With this conviction of the intention with which it was framed, the instrument is to be examined.
The patent begins with a recital, that Oliver Evans had alleged himself to be the inventor of a new and useful improvement in the art of manufacturing flour, &c., by the means of several machines, for a description of which reference is made to his specification. It will not be denied, that if the allegation of Oliver Evans was necessarily to be understood as conforming to this recital, if our knowledge of it was to be derived entirely from this source, the fair construction would be, that his application was singly for the exclusive right to that improvement which was produced by the cambined operation of his machinery. But in construing these terms, the court is not confined to their most obvious import. The allegation made by Oliver Evans, and here intended to be recited, is in his petition to the secretary of state. That petition is embodied in, and becomes a part of the patent; it explains itself, and controls the words of reference to it. His allegation is not "that he has invented a new and useful improvement," but that he has discovered certain useful improvements. The words used by the department of state in reciting this allegation, must then be expounded by the allegation itself, which is made a part of the patent. The recital proceeds, "which improvement has not been known," &c. These words refer clearly to *the improvement first mentioned and alleged in the petition [*510 of Oliver Evans, and are, of course, to be controlled in like manner with the antecedent words, by that petition. This part of the recital is concluded by adding, that Oliver Evans has affirmed, that he does verily believe himself to be the true inventor or discoverer of the said improvement. But the affirmation of Oliver Evans, like his petition, is embodied in the grant, and must, of course, expound the recital of it. That affirmation is, that he does verily believe himself to be the true and original inventor of the improvements contained in his specification. In every instance, then, in which the word improvement is used in the singular number, throughout the part of the recital of this patent, it is used in reference to a *236 paper contained in the body of the patent, which corrects the term, and shows it to be inaccurate.
The patent, still, by way of recital, proceeds to add, "and agreeably to the act of congress, entitled `an act for the relief of Oliver Evans,' which authorizes the secretary of state to secure to him, by patent, the exclusive right to the use of such improvement in the art of manufacturing flour and meal, and in the several machines which he has discovered, improved and applied to that purpose; he has paid into the treasury, &c., and presented a petition to the secretary of state, signifying a desire of obtaining an exclusive property in the said improvement, and praying that a patent may be granted for that purpose."
*511] *To what do the words "said improvement" relate? The answer which has been given at the bar is entirely correct. To the improvement mentioned in the statute and in the petition, to both of which direct reference is made. But in the statute, and in the petition, the word used is "improvements," in the plural. The patent, therefore, obviously affixed to the word improvement, in the singular, the same sense in which the plural is employed, both in the statute and in the petition. We are compelled, from the whole context, so to construe the word, in every place in which it is used in the recital, because it is constantly employed with express reference to the act of congress, or to some document embodied in the patent, in each of which the plural is used. When, then the words "said improvement" are used as a term of grant, they refer to the words of the recital, which have been already noticed, and must be construed in the same sense. This construction is rendered the more necessary, by the subsequent words, which refer for a description of the improvement to the schedule. It also derives some weight from the words, "according to law," which are annexed to the words of grant. These words can refer only to the general patent law, and to the "act for the relief of Oliver Evans." These acts, taken together, seem to require that the patent should conform to the specification, affirmation and petition of the applicant.
It would seem as if the claim of Oliver Evans was rested, at the circuit court, on the principle, that a grant for an improvement, by the combined *512] operation *of all the machinery, necessarily included a right to the distinct operation of each part, inasmuch as the whole comprehends all its parts. After very properly rejecting this idea, the judge appears to have considered the department of state, and the patentee, as having proceeded upon it, in making out this patent. He supposed the intention to be, to convey the exclusive right in the parts as well as in the whole, by a grant of the whole; but as the means used are, in law, incompetent to produce the effect, he construed the grant according to his opinion of its legal operation. There is great reason in this view of the case, and this court has not discarded it, without hesitation. But as the grant, with the various documents which form a part of it, would be contradictory to itself; as these apparent contradictions are all reconciled by considering the word "improvement" to be in the plural instead of the singular number; as it is apparent, that this construction gives to the grant its full effect, and that the opposite construction would essentially defeat it, this court has, after much consideration and doubt, determined to adopt it, as the sound exposition of the instrument.
*237 The second error alleged in the charge, is, in directing the jury to find for the defendant, if they should be of opinion, that the hopperboy was in use, prior to the improvement alleged to be made thereon by Oliver Evans. This part of the charge seems to be founded on the opinion, that if the patent is to be considered as a grant of the exclusive use of distinct improvements, *it is a grant for the hopperboy itself, and not for an improvement [*513 on the hopperboy. The counsel for the plaintiff contends, that this part of the charge is erroneous, because, by the "act for the relief of Oliver Evans," congress has itself decided, that he is the inventor of the machines for which he solicited a patent, and has not left that point open to judicial inquiry. This court is not of that opinion. Without inquiring whether congress, in the exercise of its power "to secure for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries," may decide the fact, that an individual is an author or inventor, the court can never presume congress to have decided that question in a general act, the words of which do not render such a construction unavoidable. The words of this act do not require this construction. They do not grant to Oliver Evans the exclusive right to use certain specified machines; but the exclusive right to use his invention, discovery and improvements; leaving the question of invention and improvement open to investigation, under the general patent law.
The plaintiff has also contended, that it is not necessary for the patentee to show himself to be the first inventor or discoverer. That the law is satisfied, by his having invented a machine, although it may have been previously discovered by some other person. Without a critical inquiry into the accuracy with which the term invention or discovery may be applied to any other than the first inventor, the court *considers this question as [*514 completely decided by the 6th section of the general patent act. That declares, that if the thing was not originally discovered by the patentee, but had been in use, or had been described in some public work, anterior to the supposed discovery of the patentee, judgment shall be rendered for the defendant, and the patent declared void. Admitting the words "originally discovered," to be explained or limited by the subsequent words, still, if the thing had been in use, or had been described in a public work, anterior to the supposed discovery, the patent is void. It may be, that the patentee had no knowledge of this previous use or previous description; still, his patent is void: the law supposes he may have known it; and the charge of the judge, which must be taken as applicable to the testimony, goes no further than the law.
The real inquiry is, does the patent of Oliver Evans comprehend more than he has discovered? If it is for the whole hopperboy, the jury has found that this machine was in previous use. If it embraces only his improvement, then the verdict must be set aside. The difficulties which embarrass this inquiry are not less than those which were involved in the first point. Ambiguities are still to be explained, and contradictions to be reconciled. The patent itself, construed without reference to the schedule other documents to which it refers, and which are incorporated in it, would be a grant of a single improvement; but construed with those *documents, [*515 it has been determined to be a grant of the several improvements which he has made in the machines enumerated in his specification. *238 But the grant is confined to improvements. There is no expression in it which extends to the whole of any one of the machines which are enumerated in his specification or petition. The difficulty grows out of the complexity and ambiguity of the specification and petition. His schedule states his first principle to be the operation of his machinery on the meal, from its being ground until it is bolted. He adds, "this principle I apply by various machines, which I have invented, constructed and adapted to the purposes hereafter specified."
His second principle is the application of the power that moves the mill to his machinery. The application of these principles, he says, to manufacturing flour, is what he claims as his invention or improvement in the art. He asserts himself to be the inventor of the machines, and claims the application of these principles, to the improvement of the process of manufacturing flour, and other purposes, as his invention and improvement in the art. The schedule next proceeds to describe the different machines as improved, so as to include in the description the whole machine, without distinguishing his improvement from the machine as it existed previous thereto; and in his fourth number, he says, "I claim the exclusive right to the principles, and to all the machines above specified, and for all the uses and purposes specified, as not having been heretofore known or used, before I discovered them.
*516] *If the opinion of the court were to be formed on the schedule alone, it would be difficult to deny that the application of Oliver Evans extended to all the machines it describes. But the schedule is to be considered in connection with the other documents incorporated in the patent. The affirmation which is annexed to it avers, that he is the inventor, not of the machines, but of the improvements herein above specified. In his petition, he states himself to have discovered certain useful improvements, applicable to the art of manufacturing flour, and prays a patent for the same; that is, for his improvements, agreeable to the act of congress, entitled, "an act for the relief of Oliver Evans." After stating the principles as in his schedule, he adds, "the machinery consists of an improved elevator, an improved conveyor, an improved hopperboy, an improved drill, and an improved kiln-drier." Although, in his specification, he claims a right to the whole machine, in his petition, he only asks a patent for the improvements in the machine. The distinction between a machine, and an improvement on a machine, or an improved machine, is too clear, for them to be confounded with each other.
The act of congress, agreeable to which Evans petitions for a patent, authorizes the secretary of state to issue one, for his improvements in the art of manufacturing flour, "and in the several machines which he has *517] invented, discovered, improved and applied to that purpose." *In conformity with this act, this schedule, and this petition, the secretary of state issues his patent, which, in its terms, embraces only improvements. Taking the whole together, the court is of opinion, that the patent is to be constructed as a grant of the general result of the whole machinery, and of the improvement in each machine. Great doubt existed, whether the words of the grant, which are expressed to be for an improvement or improvements only, should be understood as purporting to be a patent only for improvements; or should be so far controlled by the specification and *239 petition, as to be considered as a grant for the machine as improved, or in the words of the schedule and petition, for "an improved elevator, an improved conveyor, an improved hopperboy, an improved drill, and an improved kiln-drier." The majority of the court came at length to the opinion, that there is no substantial difference, as they are used in this grant, whether the words grant a patent for an improvement on a machine, or a patent for an improved machine; since the machine itself, without the improvement, would not be an improved machine. Although I did not concur in this opinion, I can perceive no inconvenience from the construction.
It is, then, the opinion of this court, that Oliver Evans may claim, under his patent, the exclusive use of his inventions and improvements in the art of manufacturing flour and meal, and in the several machines which he has invented, and in his improvements on machines previously discovered. *In all cases where his claim is for an improvement on a machine, it [*518 will be incumbent on him to show the extent of his improvement, so that a person understanding the subject may comprehend distinctly in what it consists.
Some doubts have been entertained, respecting the jurisdiction of the courts of the United States, as both the plaintiff and defendant are citizens of the same state. The 5th section of the act to promote the progress of useful arts, which gives to every patentee a right to sue in a circuit court of the United States, in case his rights be violated, is repealed by the 3d section of the act of 1800, ch. 179, which gives the action in the circuit court of the United States, where a patent is granted "pursuant" to that act, or to the act for the promotion of useful arts. This patent, it has been said, is granted, not in pursuance of either of those acts, but in pursuance of the act "for the relief of Oliver Evans." But this court is of opinion, that the act for the relief of Oliver Evans is engrafted on the general act for the promotion of useful arts, and that the patent is issued in pursuance of both. The jurisdiction of the court is, therefore sustained.
As the charge delivered in the circuit court to the jury differs in some respects from this opinion, the judgment rendered in that court is reversed and annulled, and the cause remanded to the circuit court, with directions to award a venire facias de novo, and to proceed therein according to law.
Judgment reversed.
*JUDGMENT.  This cause came on to be heard, on the transcript of [*519 the record of the circuit court for the district of Pennsylvania, and was argued by counsel, on consideration whereof, this court is of opinion, that there is error in the proceedings of the said circuit court, in this, that the said court rejected testimony which ought to have been admitted; and also in this, that, in the charge delivered to the jury, the opinion is expressed, that the patent, on which this suit was instituted, conveyed to Oliver Evans only an exclusive right to his improvement in manufacturing flour and meal, produced by the general combination of all his machinery, and not to his improvement in the several machines applied to that purpose; and also, that the said Oliver Evans was not entitled to recover, if the hopperboy, in his declaration mentioned, had been in use previous to his alleged discovery. Therefore, it is considered by this court, that the judgment of the circuit *240 court be reversed and annulled, and that the cause be rendered to the said circuit court, with directions to award a venire facias de novo.[(a)][1]
NOTES
[1] Grant v. Raymond, 6 Pet. 246; Day v. New England Car-Spring Co., 3 Bl. C.C. 179; Latta v. Shawk, 1 Bond 259; Phillips v. Comstock, 4 McLean 525.
[(a)] See Appendix, Note II.
[1] For a further decision in this case, see 3 W.C.C. 443, affirmed in this court, 7 Wheat. 356.